**In re MANSFIELD FERROUS CASTINGS, INC., Debtor in Possession.**

**Bankruptcy No. 687–01567.**

United States Bankruptcy Court, N.D. Ohio.

March 6, 1991.

John A. Schwemler, Brouse & McDowell, Akron, Ohio, for debtor.

Richard R. Fowler, Weldon, Huston & Keyser, Mansfield, Ohio, for Bank One, Mansfield, Trustee.

Richard A. Princic, Day Ketterer, Raley, Wright & Rybolt, Canton, Ohio, for the Employees' Committee.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

This matter came before the court on the objection of the debtor, Mansfield Ferrous Castings, Inc. (Mansfield) to (1) the allowance of a claim by Bank One, Mansfield, N.A. as Trustee of the Mansfield Employee Stock Ownership Plan and Trust (ESOP Trustee) in the amount of $574,573.47 (ESOP Claim); and (2) the allowance of 94 claims filed by former employees of Mansfield (Employees), each in the amount of $4,000.00, plus 12% interest, as evidenced by a promissory note from the ESOP Trustee to each individual Employee (Employee Claims).

A consolidated hearing was held on December 19, 1990 at which the parties sub-

mitted testimony and various exhibits. The court instituted a briefing schedule and the parties' briefs were timely filed. The court will refer to the previously submitted exhibits as Mansfield Exhibits 1–12 and Trustee Exhibits A–E.

The court has jurisdiction in this matter by virtue of 28 U.S.C. § 1334(b) and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). This Memorandum of Decision constitutes the court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## FACTS

Mansfield was formed as an Ohio corporation in October, 1984 for the purpose of acquiring the assets and continuing the operations of Ohio Brass Company. Seven hundred fifty (750) shares of no-par stock were authorized. In a memorandum dated November 15, 1984 to all employees (Mansfield Exhibit 4), Mansfield advised that it would be "owned solely by its employees" through an employee stock ownership plan (ESOP). (Mansfield Exhibit 4, p. 1) The ESOP would borrow funds to purchase Mansfield stock which, in turn, would be allocated equally to a separate account maintained by the ESOP for each eligible employee. A total of 4.58 million dollars was borrowed from the following sources: (1) 3.08 million dollars in cash made up by the following: (a) A 1.5 million dollar loan from a bank group; (b) a 1 million dollar credit line; and (c) $558,000.00 in employee loans.[1] (2) 1.5 million dollars from the Ohio Brass Company.

As part of the formation of Mansfield and its ESOP, Mansfield and the ESOP Trustee executed an Employee Stock Ownership Plan and Trust Agreement (ESOP Trust Agreement) dated November 15, 1984. (Mansfield Exhibit 8) The purpose of the ESOP was to "enabl[e] eligible Employees of the Company to accumulate capital ownership in the Company." (Mansfield Exhibit 8, para. 3) Mansfield was to make an annual contribution "of sufficient

amount for the repayment by the Trust of indebtedness (including principal and interest) incurred from time to time for the purpose of the acquisition of Company stock." (Mansfield Exhibit 8, para. 5A) However, the ESOP Trustee was under no duty to enforce the payment of contributions, and Mansfield had the sole authority to determine contributions made. (Mansfield Exhibit 8, para. 5A) In addition, Mansfield had the right to terminate contributions if "circumstances not now foreseen or ... beyond its control make it either impossible or inadvisable to continue to make its contributions." (Mansfield Exhibit 8, para. 25) Even if no contributions were made, the ESOP could continue, although the board of directors had the option of terminating the ESOP by formal resolution. (Mansfield Exhibit 8, para. 26)

The funds, including the Employee contributions, were paid over by the ESOP Trustee to Mansfield and used in the business, which commenced December 3, 1984. On December 7, 1984, a shareholder certificate was issued to the ESOP certifying it as the registered holder of 500 shares of Mansfield stock. (Mansfield Exhibit 7) Those shares were pledged as collateral for the loans from the bank group and Ohio Brass. As the loans were repaid, the shares would correspondingly be released from encumbrance and allocated equally by the ESOP to the Employee accounts. (Mansfield Exhibit 4, p. 4)

Interest on the Employee loans was paid through August 31, 1987. No principal payments were made and all payments ceased after that date. Mansfield filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 26, 1987. The ESOP Trustee was listed as a creditor in Mansfield's bankruptcy schedules. Ninety-four Employees filed proofs of claim, and all Employee Claims were included in the proof of claim filed by the ESOP Trustee on April 28, 1988. (Trustee Exhibit F)

---

1. $4,000.00 from each of 139 employees, plus $2,800.00 from two additional employees. The remainder of the ESOP claim consists of accrued interest at 12%.

## DISCUSSION

The court must decide three questions with regard to both the ESOP Claim and the Employee Claims. They are:

1. Is the claim one of a creditor for a debt, or one of an equity security holder for an interest?

2. Are the claims, or any of them, duplicative?

3. Is the claim allowable as either a claim of debt or of interest?

Analysis should begin with a review of the Bankruptcy Code definitions of debt and equity claims. A "claim" may be either a right to payment or a right to an equitable remedy for breach of performance which gives rise to a right to payment, "whether or not such right ... is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(4) "Debt" is a liability on a claim. 11 U.S.C. § 101(11) A "creditor" is an entity which has a claim against the debtor or the debtor's estate. 11 U.S.C. § 101(9) "Equity security" is a share in a corporation or similar security, which need not be transferable or denominated as "stock." 11 U.S.C. § 101(15) Finally, an "equity security holder" has its plain meaning, a holder of the debtor's equity security. 11 U.S.C. § 101(16) Mansfield has based its objection to the claims on 11 U.S.C. § 502(b)(1), i.e., that the claims are unenforceable against the debtor and its property under any agreement or applicable law.

### 1.

### *The Employee Claims*

■ There is little attention given to the Employee Claims in the ESOP Trustee's brief, other than a bare statement that the Employee Claims arise from their status as third party beneficiaries to the allegedly breached ESOP Trust Agreement.[2] Despite this apparent near-concession to disallowance, the court notes several other reasons why the Employees cannot bring individual claims against Mansfield. The notes given to the Employees, as exemplified by Mansfield Exhibit 12 and Trustee Exhibit A do not evidence any sort of debt or obligation owed by Mansfield to the Employees. Rather, the obligation of repayment is owed by the ESOP itself, a trust created under Ohio law separate and distinct from Mansfield. The Employees' only recourse in the event of default is against the trust contributions, the collateral, and any attributable earnings. Mansfield owed no obligation to the Employees, but only to the ESOP, according to the terms of the ESOP Trust Agreement, and only the Trustee had the power to bring a claim on behalf of the ESOP. (Mansfield Exhibit 8, para. 18(e))

Consequently, the Employees cannot to be said to have a claim against Mansfield or its estate, in that any right to payment flowed from the Trust by virtue of the notes. They were not owed a debt by Mansfield, nor were they equity security holders because the shares were held and owned by the Trust. The Employees have shown no basis for their claims, as defined by the Code, and the Employee Claims must therefore be disallowed.

### 2.

### *The ESOP Claim*

■ The Trustee bases its ESOP Claim, as a creditor of Mansfield, on Mansfield's alleged breach of the ESOP Trust Agreement due to Mansfield's failure to pay contributions into the Trust. The Trustee characterizes the ESOP's standing as a party to a contract, not a shareholder. What the Trustee fails to address is that the ESOP Trust Agreement does *not* require Mansfield to make contributions to the ESOP. The ESOP Trust Agreement itself provides, in paragraph 25, that Mansfield has the right to terminate its contributions if circumstances warrant. The final distribution was made less than two months prior to the Chapter 11 filing. It is not difficult to discern that the prospect of insolvency is such a circumstance that would cause Mansfield to stop contributing to the ESOP, particularly in light of the fact that further contributions would have been prohibited under Ohio law, as dis-

---

**2.** While the Employees' Committee is represented by counsel, it filed but a short memorandum joining the Trustee's brief and urging allowance of the ESOP Claim.

cussed subsequently. The Trustee cannot claim a breach of the ESOP Trust Agreement when Mansfield was legitimately exercising its rights thereunder.

 It is undisputed that the ESOP was a holder of 500 shares of Mansfield stock. (Mansfield Exhibit 7) Ohio law recognizes the distinction between a creditor and a shareholder, and an entity "is either a stockholder or a creditor; he cannot, by virtue of the same certificate, be both." *Miller v. Ratterman,* 47 Ohio St. 141, 154, 24 N.E. 496 (1890) The Bankruptcy Code also differentiates between creditors and equity security holders, both in its definitional and treatment provisions. *See, e.g.,* 11 U.S.C. §§ 101(9), 101(16), 501(a). The Trustee even refers to itself in its brief as a "shareholder." (Trustee Brief, pp. 4–5) The fact remains that the ESOP purchased and owned the shares of stock, and based on that purchase and ownership, the Trustee was granted the right under the ESOP Trust Agreement to receive contributions. The ESOP Claim must therefore be classified as a claim of an equity security holder.

The final issue is whether the ESOP Claim should be allowed as a claim of an equity security holder. Mansfield, in its brief, posits that the contributions to the ESOP are either dividends or distributions to its shareholder, or akin to a repurchase of the shares by virtue of freeing them from encumbrance so the Employees can receive the benefit. Because the ESOP Trust Agreement provides for payment of dividends, as well as contributions, it is unlikely that the contributions were intended as "dividends." (Mansfield Exhibit 8, para. 11) However, under Ohio law, a corporation may also make "distributions" to shareholders in cash, property or shares. O.R.C. § 1701.33(A) (Page 1985) The majority shareholder may not compel a distribution; indeed, a distribution when the corporation is insolvent, or would be rendered insolvent by such payment, is prohibited. O.R.C. § 1701.33(C) (Page 1985); *Cf. U.S. v. Byrum,* 408 U.S. 125, 92 S.Ct. 2382, 33 L.Ed.2d 238 (1972) (under Ohio law the power to declare dividends rests solely in a corporation's board of directors). The contribution process as described in the ESOP Trust Agreement is analogous to this stat-

utory scheme. For example, contributions may be made in cash, property or shares. Mansfield, through its board of directors, could determine the amount of contribution, but could not be compelled by the Trustee to make such payment. (Mansfield Exhibit 8, para. 5)

 Similarly, although in a somewhat more attenuated context, the contributions could be viewed as a "repurchase" of the shares by Mansfield, as the payment allows the shares to be freed from encumbrance and accrue to the benefit of the ESOP participants. A repurchase is permitted for the purpose of offering and sale to a corporation's employees, pursuant to a plan adopted for such purpose. O.R.C. § 1701.-35(A)(4) (Page 1985) However, the court need not decide whether the contributions are distributions or repurchases, for the result is the same in either case. The last contribution was made in August, 1987. John Pollock, Mansfield's president, testified that the company was in financial trouble in May, 1987, and it is undisputed that Mansfield was insolvent in October, 1987 when it filed its bankruptcy petition. Both distributions to shareholders and share repurchases are prohibited under Ohio law when a corporation is or would thereby be rendered insolvent. O.R.C. §§ 1701.33(C), 1701.35(B) (Page 1985) The Trustee has offered little rebuttal to Mansfield's argument that the insolvency renders the ESOP Claim unenforceable under Ohio law, save for the arguments that the court has disposed of, and the statement that the contributions are an employee benefit rather than a dividend or purchase of shares.

In summation, the Employee Claims are disallowed because they do not qualify as creditors or equity security holders under 11 U.S.C. §§ 101(9), 101(16) and 501(a). The ESOP Claim is a claim of an equity security holder, but it is disallowed pursuant to 11 U.S.C. § 502(b)(1) because it is unenforceable under Ohio law.